1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| A.B., a minor, individually and as successor in interest to decedent, Kristopher Birtcher, by and through her Guardian ad Litem, Ryan Birtcher; MICHAEL BIRTCHER, individually; and CATHERINE BIRTCHER, individually, | Case No.: 18cv1541-MMA-LL |

12
13
14
15

Plaintiffs,

v.

16
17
18
19
20

COUNTY OF SAN DIEGO; SAN DIEGO SHERIFF'S DEPARTMENT; WILLIAM D. GORE, Sheriff; DREW BEATTY; ADRIAN CARRILLO; ROLAND GARZA; JOSEPH KODADEK; JOHN ROBLEDO; SCOTT ROSSALL; FRANK STALZER; SCOTT WINTER; and DOES 1-10, inclusive,

21

Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' DAUBERT MOTION;**

[Doc. No. 49]

**ORDER DENYING PLAINTIFFS' DAUBERT MOTION;**

[Doc. No. 50]

**ORDER DENYING PLAINTIFFS' DAUBERT MOTION; AND**

[Doc. No. 51]

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' DAUBERT MOTION**

[Doc. No. 52]

22
23
24
25
26
27
28

Plaintiffs A.B., successor in interest to decedent, Kristopher Birtcher ("Kristopher"), by and through her Guardian ad Litem, Ryan Birtcher, as well as Catherine Birtcher and Michael Birtcher (collectively, "Plaintiffs") bring this civil rights action against the County of San Diego, the San Diego Sheriff's Department, Sheriff William D. Gore, and multiple individual San Diego County Sheriff's deputies (collectively, "Defendants"), alleging constitutional violations arising out of Kristopher's death on October 14, 2017.  *See* Doc. No. 1.  The parties have filed cross-motions for summary judgment and relatedly move to exclude certain opinions proffered by each other's retained experts.[1]  *See* Doc. Nos. 44-47, 49-54.  As relevant here, Plaintiffs move to exclude certain opinions proffered by Defendants' experts, Jeffrey Martin ("Martin"), Dr. Gary Vilke ("Dr. Vilke"), Dr. Binh Ly ("Dr. Ly"), and Dr. Matthew Steiner ("Dr. Steiner").  *See* Doc. Nos. 49, 50, 51, 52.  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motions.

## 1. Legal Standard

Rule 702 of the Federal Rules of Evidence provides that expert opinion evidence is admissible if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  The proponent of the expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 & n.10 (1993).  Expert opinion testimony is reliable if it has a "basis in the knowledge and experience of [the relevant] discipline."  *Id.* at 592-93 ("knowledge" requires more than a subjective belief or an unsupported speculation; it requires an appropriate level of

---

[1] The Court will address Defendants' *Daubert* motions and the parties' summary judgment motions in separate written rulings.

validation).  As the Ninth Circuit has explained:

> Under *Daubert* and its progeny, including *Daubert* II, a district court's inquiry into admissibility is a flexible one.  *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).  In evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder."  *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation and quotation marks omitted).

> "[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'"  *Id.* at 564 (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)).  "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.  And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."  *Id.* at 565 (citation and internal quotation marks omitted).  "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."  *Id.* at 564 (citation omitted).  The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."  *Alaska Rent-A-Car*, 738 F.3d at 969.  Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury."  *Id.* at 969-70.

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043-44 (9th Cir. 2014).  "Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge.  A district court should not make credibility determinations that are reserved for the jury."  *Id.* at 1044.

**2. Discussion**

    a. <u>Plaintiffs' Motion to Exclude Certain Opinions Proffered by Jeffrey Martin</u>

Plaintiffs move to exclude the following categories of opinions proffered by Defendants' police practices expert, Jeffrey Martin: (1) opinions about what video recordings depict or what actually occurred during the deputies' interactions with the decedent, Kristopher; (2) foundational opinions regarding the use of digital video evidence in officer-involved incidents; (3) medical opinions; (4) medical opinions

1  disguised as training opinions; (5) legal opinions; and (6) opinions regarding the states of

2  mind of the individual defendants and Kristopher.  *See* Doc. No. 49-1 ("Martin *Daubert*")

3  at 1.  Defendants filed an opposition (Doc. No. 68 ("Martin Opp.")), to which Plaintiffs

4  replied.  Doc. No. 79 ("Martin Reply").

5                    i.  *Opinions Regarding What Videos Depict or What Occurred,*

6                        *Foundational Opinions, and States of Mind Opinions*

7           First, Plaintiffs argue that Martin's expert reports contain opinions that should be

8  excluded as unhelpful to the jury and unreliable because they concern what is depicted in

9  video recordings and what actually happened during the incident in question.  *See* Martin

10 *Daubert* at 2-3.  Second, Plaintiffs argue that Martin's foundational opinions are

11 unhelpful and intrude on the jury's province of weighing credibility.  *See id*. at 4.  Third,

12 Plaintiffs assert that Martin's opinions about the states of mind of the individual deputy

13 defendants (hereinafter, "deputies") and Kristopher should be excluded as irrelevant and

14 unreliable.  *See id*. at 8.  Defendants respond that Martin's opinions are appropriate

15 because they lay out the factual bases for Martin's opinions as a police practices expert.

16 *See* Martin Opp. at 2-3.  Therefore, according to Defendants, Martin "should be permitted

17 to identify and discuss scenes in video footage that are important to his analysis . . .."

18 Martin Opp. at 3.

19          First, the Court finds that Martin is allowed to testify as to his observations that

20 form the basis for his conclusions, but the testimony may not amount to instructing the

21 jury as to what actually took place during the incident.  Plaintiffs' challenge here presents

22 a fine line that Defendants must draw in eliciting testimony from Martin.  On one hand, it

23 would be unhelpful to the jury for Martin simply to take the witness stand and recount his

24 observations from the video evidence, since the jury is no less capable of viewing the

25 evidence and drawing their own conclusions.  On the other hand, it would be odd for

26 Martin to present his ultimate conclusions in a vacuum without explaining how he

27 reached those conclusions.  Rather, the proper approach is to allow Martin to explain the

28 basis for his opinions, which will undoubtedly be informed by his observations of the

1  video evidence.  "[T]he disclosure of [such] basis evidence can help the factfinder

2  understand the expert's thought process and determine what weight to give to the expert's

3  opinion."  *Williams v. Illinois*, 567 U.S. 50, 78 (2012).  Thus, the Court recognizes

4  Plaintiffs are correct that Martin's testimony regarding his mere observations drawn from

5  the video evidence would be unhelpful to the jury.  However, Martin's testimony

6  regarding what he gathered from the video evidence, and how he applied his

7  methodology to form his ultimate conclusions, would be helpful to the jury.  In this latter

8  scenario, Plaintiffs' concerns that the jury will simply accept Martin's views of the

9  evidence could be addressed on cross-examination by identifying any infirmities in the

10  basis for Martin's conclusions.

11  The cases relied upon by Plaintiffs are inapposite.  In their moving papers,

12  Plaintiffs rely on cases involving an audio/video expert who testified beyond the scope of

13  the methodology involved for making modifications to the evidence at issue in those

14  cases.  *See Lee v. Anderson*, 616 F.3d 803, 808-09 (8th Cir. 2010); *Zeen v. County of*

15  *Sonoma*, No. 17-CV-02056, 2018 WL 3769867, at *2 (N.D. Cal. Aug. 9, 2018); *Lam v.*

16  *City of San Jose*, No. 14-CV-00877, 2015 WL, 6954967, at *2 (N.D. Cal. Nov. 10, 2015).

17  Moreover, the additional cases cited in Plaintiffs' reply are similarly unpersuasive and,

18  upon close examination, have distinguishing factors that demonstrate why Martin should

19  be allowed to provide the basis for his ultimate conclusions.  For example, in *Sherrod v.*

20  *McHugh*, the court had before it an issue in which two experts proffered testimony as to

21  the "proper interpretation" of video evidence.  334 F. Supp. 3d 219, 271 (D.D.C. 2018).

22  The court's exclusion of such testimony does not persuade this Court to rule similarly

23  because the dispute here does not concern an expert opinion as to the proper

24  interpretation of the video evidence.  Martin may proffer no such opinion, but he may

25  testify as to his observations that formed the basis of his conclusions.[2]  Similarly, in

26  _____

27

28  [2] The Court reminds Plaintiffs that a limiting instruction will also be available to alleviate their concerns
about a possible intrusion on the jury's fact-finding responsibility.  *See, e.g.,* Ninth Circuit Committee

*Barnes v. City of Pasadena*, the court excluded an expert declaration proffering an opinion that "enhanced photographs show the presence of a gun." No. 10-CV-00470, 2011 WL 13143536, at *3 (C.D. Cal. May 5, 2011) (explaining that "[w]hat a photograph depicts is readily visible to a lay person and is not a proper subject of expert testimony") (citing Fed. R. Evid. 702). Again, while Martin may not proffer an opinion as to the proper interpretation of a video or photograph, he may discuss the video evidence in so far as it forms the basis for his ultimate conclusions and opinions. The members of the jury will certainly be able to view the video evidence and draw their own conclusions, which may or may not overlap with Martin's observations and affect the weight they assign to Martin's conclusions.

Second, Plaintiffs challenge Martin's "foundational" opinions. Plaintiffs provide one example: Martin opines that "digital video evidence does not necessarily reflect the reasonable officers' perspectives," and "fail[s] to accurately represent the fears, emotions, and stressors that might be affecting an officer's reasonable perceptions and decision making." Martin *Daubert* at 4 (citing Doc. No. 49-2, Ex. D at 5-6). Plaintiffs contend that such testimony improperly "instruct[s] the jury on how to weigh conflicting evidence." *Id*. However, Plaintiffs do not accurately characterize Martin's opinion here, as a review of his report shows that Martin is drawing on his expertise as a police practices expert in an attempt to provide the jury with the perspective of a reasonable officer. *See* Doc. No. 49-2, Ex. D at 5 ("[T]he use of digital video evidence must be put into proper perspective."). Thus, to assist the jury in its fact-finding function, Martin discusses the "basic limitations of video evidence," given that a "consideration[] in evaluating peace officers' force responses is that they '. . . must be judged from the perspective of a reasonable officer on the scene.'" Accordingly, the Court will not

_____

on Model Civil Jury Instructions, *Manual of Model Civil Jury Instruction for the District Courts of the Ninth Circuit*, § 1.11 (2017).

exclude such foundational opinions, as they do not infringe on the jury's role of determining credibility.

Lastly, Plaintiffs argue that the Court should exclude Martin's discussions of the subjective intent of Kristopher, and the deputies' subjective beliefs or motivations, as irrelevant and improper expert opinion evidence. *See* Martin *Daubert* at 4. Defendants appear to argue that such discussions, like Martin's observations of the video evidence, form the basis for his opinions. *See* Martin Opp. at 1-2. Plaintiffs are correct that expert testimony on one's subjective state of mind and motives are impermissible. *See Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, No. 17-CV-205, 2020 WL 2553181, at *5 (S.D. Cal. May 20, 2020) (expert opinions "on the intent, motives, or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise.") (internal quotations and citations omitted). The reason is because such testimony "has 'no basis in any relevant body of knowledge or expertise.'" *Id.* at *6 (quoting *Stone Brewing Co., LLC v. MillerCoors LLC*, No. 18-CV-331, 2020 WL 907060, at *4 (S.D. Cal. Feb. 25, 2020)). Plaintiffs cite several examples indicating that Martin intends impermissibly to opine on the states of mind and motives of Kristopher and the deputies based on "inferences that [he] would draw from watching the videos . . .." Martin *Daubert* at 8-9; Doc. No. 49-2, Ex. F at 31-32. Such testimony has no basis in any relevant body of knowledge or expertise and is therefore inadmissible.

In sum, for the reasons discussed above, the Court **GRANTS** Plaintiffs' motion to exclude Martin's opinions on the states of mind and motives of Kristopher and the deputies. However, the Court **DENIES** Plaintiffs' motion to exclude Martin's observations of the video evidence that form the basis for his conclusions and his "foundational" opinions.

### ii. *Medical Opinions*

Plaintiffs further seek to exclude what they identify as impermissible medical opinions, including those disguised as training opinions. *See* Martin *Daubert* at 4-7. Defendants contend that "Martin, a sufficiently qualified police practices expert, should

1   be allowed to opine on what medical training deputies receive and/or what medical

2   knowledge a well-trained deputy is expected to possess."  Martin Opp. at 4 (citing

3   *Arrington v. City of Los Angeles*, No. 15-CV-03759, 2017 WL 10543403, at *7 (C.D.

4   Cal. 2017)).

5          The Court finds that Defendants have failed to carry their burden to demonstrate by

6   a preponderance of the evidence that the medical-related opinions proffered by Martin are

7   admissible.  While it is true that Martin may opine on the medical training received or

8   medical knowledge possessed by a reasonable deputy, the opinions identified by

9   Plaintiffs go well beyond these topics.  *See* Martin Reply 5-6.  First, Martin's opinions

10  about the "worst injury that Mr. Birtcher sustained" (Doc. No. 49-2, Ex. D at 21) or the

11  cause of a "fracture to Deputy Robledo's right-ring finger" (*id*. at 12, 21) bear no relation

12  to the medical training received or medical knowledge possessed by a reasonable deputy.

13  Similarly, Defendants fail to establish the reliability of Martin's opinion on

14  methamphetamine causing pupils to constrict.  It is unclear to the Court whether Martin is

15  drawing on his expertise in police practices; Martin fails to state whether his experience

16  forms the basis for these opinions, or whether another source of specialized knowledge

17  does.  Plaintiffs correctly point out that Martin vaguely describes the basis for his opinion

18  on pupil constriction as merely something that "some peace officers understand."  *Id*. at

19  30.  Contrary to Defendants' suggestion, Martin's opinion here does not speak to the

20  training or knowledge that a "well-trained deputy" is expected to receive or possess.  *See*

21  Martin Opp. at 4.  Nor do Defendants attempt in their opposition to demonstrate whether

22  this opinion is reliable.

23          On the other hand, however, Martin's opinion that a person's ability to yell is an

24  "indication to a trained and reasonable deputy" that Kristopher was "able to adequately

25  ventilate" (*see* Doc. No. 49-2, Ex. D at 26), appears to be based on his qualifications as a

26  police practices expert.  The distinction between this opinion and Martin's opinion on

27  pupil constriction is that here, he indicates that a "trained and reasonable deputy" would

28  understand, based on their training, that a person can adequately ventilate if she can yell.

The opinion is permissible on this basis.  *Cf. Arrington v. City of Los Angeles*, No. 15-CV-03759, 2017 WL 10543403, at *7 (C.D. Cal. 2017) ("Based on [police practices expert's] training, . . . he may testify regarding the Los Angeles Police Department's practices for handling individuals who appear to be mentally unwell.").

As for Martin's opinions regarding what Plaintiffs identify as "the weight of medical research and literature," the Court finds the discussion to be admissible.  Martin Reply at 6 (citing Doc. No. 49-2, Ex. D at 27 & nn. 40-42).  A review of the pertinent portion of Martin's report shows that the passages identified by Plaintiffs form the basis for Martin's ultimate opinion, that "[n]one of the deputies acted in a manner that would cause them, or other . . . reasonable peace officers, to reasonably foresee . . . their . . . actions in restraining Mr. Birtcher, increased the danger to him . . .."  *Id*. at 27.  Plaintiffs do not challenge Martin's qualifications as a police practices expert, and Martin may draw on this expertise to point out a lack of support for the proposition that a deputy uses deadly force when she aims the TASER at the chest area.  *Id*.  Similarly, Martin may draw on this same expertise to identify the support that exists for the proposition that "contemporary [police] training is based on a considerable amount of scientific literature that discredits theories that positional asphyxia, weight force on prone subjects, or placing arrestees into prone positions, increases the risk of death or serious injury to them."  *Id*.  Contrary to Plaintiffs' suggestion, an expertise in the medical field is not necessary for Martin to be qualified to opine on these matters because Martin is not providing a medical opinion.  Rather, Martin may refer to any research and literature supporting his discussion of the pertinent police practices.  These bases for Martin's ultimate opinion on the foreseeability of increased danger fall squarely within his qualification as a police practices expert.

In sum, the Court **GRANTS IN PART** Plaintiffs' motion to exclude Martin's medical-related opinions identified above.  However, the Court **DENIES** Plaintiffs' motion with respect to Martin's opinions on Kristopher's ability to breathe and "the weight of medical research and literature."  Martin Reply at 6 (citing Doc. No. 49-2, Ex.

1  D at 27 & nn. 40-42).

2           iii. *Legal Opinions*

3           Lastly, Plaintiffs move to exclude Martin's opinions regarding "what degree of

4  force a peace officer is legally entitled to use" and "whether the deputies followed clearly

5  established law." Martin *Daubert* at 7.[3]  Defendants respond that Plaintiffs

6  mischaracterize the latter opinion and are wrong as to the propriety of the former opinion.

7  *See* Martin Opp. at 5-6.

8           "Though expert testimony is appropriate where 'scientific, technical, or other

9  specialized knowledge will assist the trier of fact,' expert testimony consisting of legal

10  conclusions is generally inappropriate." *CFM Commc'ns, LLC v. Mitts Telecasting Co.*,

11  424 F. Supp. 2d 1229, 1233 (E.D. Cal. 2005) (quoting *Aguilar v. Int'l Longshoremen's*

12  *Union Local # 10*, 966 F.2d 443, 447 (9th Cir.1992) (upholding district court's exclusion

13  of expert legal opinion as "utterly unhelpful")).  Under Federal Rule of Evidence 704(a),

14  "testimony in the form of an opinion or inference otherwise admissible is not

15  objectionable because it embraces an ultimate issue to be decided by the trier of fact."

16  Although under this rule, expert witnesses can testify to the ultimate issue to be decided

17  by the jury, they may not testify to legal conclusions that are intertwined with the

18  ultimate issue. *See Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1058 (9th

19  Cir. 2008) ("Resolving doubtful questions of law is the distinct and exclusive province of

20  the trial judge") (*quoting United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th

21  Cir.1993)).  "An expert witness therefore cannot offer testimony as to the reasonableness

22  of an officer's actions and whether his use of force was appropriate under the facts of the

23  case." *Sanchez v. Jiles*, No. 10-CV-9384, 2012 WL 13005996, at *31 (C.D. Cal. June 14,

24  2012) (citing *Tubar v. Clift*, No. 05-CV-1154, 2009 WL 1325952, *3 (W.D. Wash. May

---

[3] Plaintiffs also moved to exclude Martin's opinion that the "relative culpability" belongs to Kristopher due to his prior drug use. *See id.* (citing Doc. No. 49-2 at 31:31-39).  However, this issue is moot, as Defendants represent that they "will not be asking Martin to assign legal liability/culpability in this case, and agree that eliciting such expert testimony would be inappropriate."  Martin Opp. at 5, n. 4.

12, 2009) (holding that a police practices expert was precluded from offering an opinion as to whether an officer had "probable cause" to believe he was in imminent danger, whether he acted "unconstitutionally," and whether his use of force was objectively unreasonable, as these were conclusions concerning ultimate issues of law)); *see also Shirar v. Guerrero*, No. 1-CV-3906, 2017 WL 6001270, at *5 (C.D. Cal. Aug. 2, 2017) ("Police practices experts may only testify as to whether an action conformed with a reasonable standard of practice, not whether the particular officer's action was reasonable under the specific circumstances he faced.")

First, the Court finds that Martin's opinions are impermissible to the extent they purport to establish the conduct at issue was "in accordance with the law" or consistent with "clearly established law."  Plaintiffs cite several examples of such opinions.  *See* Martin *Daubert* at 7 (citing Doc. No, 49-2, Ex. D at 9:12-14,[4] 18:4-7, 19:1-5, 28:4-7). These opinions impermissibly address ultimate issues of law: (1) whether the conduct at issue was lawful, *see* Doc. No. 49-2, Ex. D at 9 ("Each of the deputies acted in a manner that indicated their responses . . . were in accordance with the law."); and (2) whether the deputies' conduct was in violation of clearly established law at the time the conduct was performed.[5]  Defendants' argue that Martin's reference to "clearly established law" is permissible because Martin does not analyze case law, argue that the clearly established law was at the time, or "state that the deputies 'followed' such law."  Martin Opp. 5.  The

---

[4] The Court will not exclude the portion of Martin's general opinion that "[t]he deputies were certified as peace officers by California POST at the time of this incident and were performing discretionary functions within the course and scope of their duties."  *Id*. at 9:16-18.  This opinion bears on Martin's expertise in police practice by asserting the conduct at issue was in conformance with certain police standards, not crossing into impermissible testimony on an ultimate issue of law.  *See Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1197 (C.D. Cal. 2015) (holding expert may opine on whether conduct at issue was an appropriate use of force based on [his] expertise in POST and other law enforcement standards").

[5] This latter ultimate issue bears on whether the deputies are entitled to qualified immunity, while the former issue bears on whether the deputies' conduct was lawful, irrespective of the issue of qualified immunity.

argument is unpersuasive as it highlights a distinction without a difference.  By opining that the deputies conduct was performed in accordance with that of a reasonable officer "aware of clearly established law" (*see* Doc. No. 49-2, Ex. D at 18-19, 28), Martin's opinions essentially tell the jury that the deputies' conduct was in accordance with clearly established law at the time.[6]  *Cf. Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1198 (C.D. Cal. 2015) (excluding an expert opinion as to whether "officers' actions were 'objectively reasonable'" under the circumstances).

Second, the Court finds the remainder of the challenged opinions are admissible. Martin's opinion – that "there is no scientific or legal support" for the proposition that an officer converts intermediate force to deadly force when targeting the chest with a TASER – does not amount to an impermissible legal conclusion on an ultimate issue of law.  Rather, the opinion appears to be grounded in Martin's expertise as a police practices expert, as the opinion essentially will tell the factfinder that he is not aware of any literature supporting the proposition regarding deadly force.  Plaintiffs' remedy for such testimony is cross-examination aimed at discrediting the opinion.

In sum, as discussed above, the Court **GRANTS IN PART** Plaintiffs' motion to exclude Martin's "legal opinions" bearing on "clearly established law."  However, the Court **DENIES** the motion with respect to Martin's opinion regarding a lack of literature on TASER being a deadly force measure.  Further, the Court **DENIES** as moot the motion to exclude Martin's opinion on "relatively culpability," since Defendants admit "eliciting such expert testimony would be inappropriate."  Martin Opp. at 5, n. 4.

*///*

---

[6] Because Plaintiffs have voluntarily dismissed their unlawful detention and arrest claim (*see* Doc. No. 54-6, Ex. BB at 4 of 4), the terms "reasonable suspicion" and "probable cause" no longer appear to be ultimate issues of law in this case.  To the extent Martin references "clearly established law" while opining on "reasonable suspicion" and "probable cause" (*see* Doc. No. 49-2, Ex. D at 18), the Court finds that even if the opinion does not address ultimate issues of law, it is excluded because its probative value is substantially outweighed by the risk of unfair prejudice to Plaintiffs and jury confusion.  *See* Fed. R. Evid. 403.  Martin's opinion can achieve the same purpose without such risks by merely referring to standard police practice or the perspective of a reasonable deputy.

b.  <u>Plaintiffs' Motion to Exclude Certain Opinions Proffered by Dr. Gary Vilke</u>

Plaintiffs move to exclude the following categories of opinions proffered by Defendants' medical expert, Dr. Gary Vilke: (1) the spit sock used on Kristopher did not contribute to his death; (2) there was no evidence the deputies failed to timely provide medical assistance; (3) characterizations of the medical examiner's conclusions about the cause of Kristopher's death; (4) the deputies had a need to use force to restrain Kristopher because of "excited delirium syndrome" and the restraint was actually "protective;" (5) Kristopher was breathing adequately because he was able to yell and move to some extent; and (6) weight force applied to Kristopher's legs, shoulders, and upper back had no significant effect on ventilation.  *See* Doc. No. 50-1 ("Vilke *Daubert*") at 1. Defendants filed an opposition (Doc. No. 65 ("Vilke Opp.")), to which Plaintiffs replied. Doc. No. 80 ("Vilke Reply").

i.  *Spit Sock*

Plaintiffs argue that Dr. Vilke's opinion – that the spit sock did not contribute to Kristopher's death (hereinafter, "spit sock opinion") – is unreliable because there is "too large an analytical gap between" Dr. Vilke's study on which he relies to form his opinion and the facts of the case.  *See* Vilke *Daubert* at 3.  Defendants respond that Dr. Vilke's opinion is reliable even without the study, and in any event, his reliance on the study is proper.  *See* Vilke Opp. at 1-3.

Plaintiffs' argument is unavailing.  As Defendants recognize, Dr. Vilke does not solely rely on his study to form the basis for his spit sock opinion.  Dr. Vilke also bases the opinion on: (1) the lack of clinical evidence that Kristopher was unable to breathe through the spit mask, (2) the absence of any "published medical support for the proposition that a spit sock has caused asphyxiation under any circumstance;" and (3) "his extensive background and experience as both a physician and expert, and his knowledge of the current landscape with respect to the medical research and literature regarding spit socks."  Vilke Opp. at 1-2 (citing Doc. No. 50-3 at 12, 17-18).  Plaintiffs' only response – that these additional bases for Dr. Vilke's spit sock opinion are

"insufficient for such pseudo-scientific claim under Rule 702 (Vilke Reply at 1) – is unpersuasive, as Plaintiffs cite not supporting authority.  Rather, Plaintiffs' arguments bear on the weight of Dr. Vilke's opinion, not its admissibility, and as such, they are more appropriately reserved for vigorous cross-examination.  *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").

Accordingly, the Court **DENIES** Plaintiffs' motion to exclude Dr. Vilke's spit sock opinion.

ii.  *Medical Assistance*

Plaintiffs next argue that Dr. Vilke's opinion – that there is "no evidence" the deputies failed timely to provide medical assistance (hereinafter, "medical assistance opinion") – should be excluded as "an impermissible legal argument . . .."  Vilke *Daubert* at 5.  Defendants respond that Plaintiffs are mischaracterizing Dr. Vilke's opinion, and that instead Dr. Vilke properly "analyzes the emergency medical assistance provided to Birtcher" and opines "that the deputies were appropriate in their delivering of medical care . . .."  Vilke Opp. at 4 (citing Doc. No. 50-3 at internal quotations omitted).

The Court finds that Dr. Vilke's medical assistance opinion does not amount to an impermissible legal opinion.  As Defendants point out, an expert opinion "is not objectionable just because it embraces an ultimate issue."  Vilke Opp. at 4 (citing Fed. R. Evid. 704(a)).  The Court is not persuaded that Dr. Vilke's medical assistance opinion is "a transparent legal conclusion," as Plaintiffs contend (Vilke Reply at 1), merely because it references there purportedly being "no evidence" showing the deputies failed to timely provide medical assistance to Kristopher.  Doc. No. 50-2, Ex. A at 12.  This opinion bears on the "objective reasonableness" standard applicable to Plaintiffs' Fourth Amendment claim (*see Borges v. City of Eureka*, No. 15-CV-00846, 2017 WL 363212, at *6 (N.D. Cal. Jan. 25, 2017)); however, Dr. Vilke's medical assistance opinion does not instruct the jury to find that the provision of medical assistance in this case was objectively

1   reasonable.  Further, for the first time in their reply, Plaintiffs raise the argument that Dr.

2   Vilke is not qualified to provide this opinion.  *See* Vilke Reply at 1-2.  This argument is

3   not only untimely, but it also misses the mark, as Defendants have shown Dr. Vilke is so

4   qualified, given his extensive experience in emergency medicine, the treatment of out-of-

5   hospital cardiac arrest, and the development of training for first responders (such as those

6   in law enforcement) "when dealing with persons exhibiting symptoms of excited

7   delirium."  Doc. No. 50-2, Ex. A at 17, 19; Doc. No. 69, Ex. A at 38-43.

8       Thus, the Court **DENIES** Plaintiffs' motion to exclude Dr. Vilke's medical

9   assistance opinion.

10                    iii.   *Medical Examiner's Conclusions of Cause of Death*

11      Plaintiffs also move to exclude Dr. Vilke's opinion agreeing "with the medical

12   examiner that Mr. Birtcher died from sudden cardiac arrest due to his methamphetamine

13   intoxication that occurred while he was restrained" (hereinafter, "medical examiner

14   opinion").  Vilke *Daubert* at 5.  Plaintiffs argue that Dr. Vilke's medical examiner

15   opinion is unreliable and unhelpful because it is actually inconsistent with the medical

16   examiner's conclusions.  *See id.* at 5-6.  Defendants respond that any inconsistencies

17   between Dr. Vilke's medical examiner opinion and the medical examiner's conclusions

18   do not warrant exclusion, but rather any inconsistencies can be explored through cross-

19   examination.  *See* Vilke Opp. 5-6.

20      The Court agrees with Plaintiffs.  The basis for Plaintiffs' position is that the

21   medical examiner (1) noted the "immediate cause" of death was "sudden cardiac arrest

22   while restrained," and (2) listed "acute methamphetamine intoxication" as an "other

23   significant condition[] contributing to death but not resulting in the underlying cause" of

24   death previously noted, *i.e.*, "sudden cardiac arrest while restrained."  Doc. No. 50-2,

25   Exs. D, E.  Defendants argue that Plaintiffs' point is belied by the medical examiner's

26   finding that "acute methamphetamine intoxication" was a "significant condition[]

27   contributing to death . . .."  Vilke Opp. at 5 (quoting Doc. No. 50-1 at 5-6).  Defendants

28   are correct that Dr. Vilke's opinion is consistent with this incomplete quotation of the

medical examiner's finding.  However, there are two aspects of this "opinion" that render it appropriate for exclusion as unhelpful to the jury.  First, it is potentially misleading as stated, since Dr. Vilke is agreeing with something that the medical examiner did not exactly find.  Second, even if Dr. Vilke changed his opinion to adopt the precise findings of the medical examiner, this opinion would remain unhelpful to the jury, which will be able simply to read and consider the medical examiner's findings without Dr. Vilke's assistance.  Therefore, the Court **GRANTS** Plaintiffs' motion to exclude the medical examiner opinion.

### iv.  *Necessary and Protective Force*

Next, Plaintiffs move to exclude Dr. Vilke's medical opinions regarding the force the deputies used to restrain Kristopher due to his exhibiting of excited delirium symptoms, including the following (hereinafter, "necessary and protective force opinions"):

- "Mr. Birtcher was demonstrating clinical findings consistent with excited delirium syndrome (ExDS) that contributed to the need for the deputies to use force to restrain him."

- "And in the days before there were medications to treat these patients, the mortality rate was reported at 75%."

- "ExDS places the individual at increased risk for sudden death syndrome . . .."

- "Mr. Birtcher demonstrated a number of symptoms consistent with ExDS."

- "ExDS has a significant mortality rate and requires medical therapy to optimize outcomes . . .."

- "Law enforcement's role is to secure a scene and get a violent or agitated or altered person safely restrained so that medical personnel can then perform an assessment and initiate treatment as appropriate. Thus, the behavior exhibited by Mr. Birtcher was consistent with ExDS from his methamphetamine use and required the deputies to use force in order to get him safely restrained in preparation for medical evaluation by EMS."

- "[T]he hobble restraint actually reduces and limits the ability of the restrained individual to exert himself and produce lactic acid and consume oxygen, and thus would actually be protective compared to ongoing running and struggling using flexion and extension of the body's large muscle groups."

*See* Vilke *Daubert* at 6-7 (citing Doc. No. 50-2, Ex. A at 14-17).  Plaintiffs take the position that such opinions are irrelevant, unhelpful to the jury, and "unreliable due to an utter lack of scientific basis." *Id*. at 7.  Defendants respond that Plaintiffs mischaracterize Dr. Vilke's necessary and protective force opinions, and in any event, the opinions are admissible given Dr. Vilke's uncontested qualifications and the relevance of the opinion. *See* Vilke Opp. at 6-7.

First, the Court finds that Dr. Vilke's necessary and protective force opinions are relevant.  The central issue in this case is whether the deputies used excessive first in their encounter with Kristopher.  Dr. Vilke's necessary and protective force opinions bear on whether the deputies' use of force was reasonable in light of their observations of Kristopher exhibiting signs of excited delirium syndrome.  These opinions meet the low bar for relevance under Federal Rule of Evidence 401.

Second, and similarly, the Court finds that Dr. Vilke's necessary and protective force opinions would be helpful to the jury.  The members of the jury will be tasked with evaluating whether the deputies' use of force was objectively reasonable.  Dr. Vilke's necessary and protective force opinions will provide the jury with helpful context as to the actions of the deputies who purportedly observed Kristopher's symptoms of excited delirium syndrome.  Plaintiffs argument – that the deputies used such force "because [Kristopher] was under the influence and/or resisting them," not "because of excited delirium" – is insufficient.  The undisputed facts that Kristopher was under the influence of methamphetamine and resisting authority underscore the helpfulness as to Dr. Vilke's necessary and protective force opinions providing context for evaluating the use of force here.

Lastly, the Court finds that Dr. Vilke's necessary and protective force opinions are

reliable.  "Because the Defendant has not challenged the qualifications of Plaintiffs'
experts, the court focuses on the substance of Plaintiffs' proffered expert testimony."
*Henricksen v. ConocoPhillips Co.*, 605 F.Supp.2d 1142, 1155 (E.D. Wash. 2009).  Here,
the substance of the necessary and protective opinions, which Defendants accurately
summarize, is essentially as follows: (1) "the hobble restraint is *generally* an effective
tool that can decrease the chances of *any* suspect (whether or not they may be
experiencing excited delirium) over-exerting themselves," and (2) "law enforcement is
expected to 'get a violent or agitated or altered person safely restrained' in order to allow
medical personnel to then safely evaluate them."  Vilke Opp. at 6-7 (citing Doc. No. 50-
2, Ex. A at 14, 17) (emphasis in original).  Defendants are correct that these opinions
"explain *why* Birtcher may have been resisting as fiercely as he was and why the deputies
struggled to control him . . .."  *Id.* at 7.  Plaintiffs do not argue that Dr. Vilke is
unqualified to give these opinions, but rather the opinions are not based on sufficient
facts or data.  *See* Vilke *Daubert* at 7.  Plaintiffs are incorrect.  As discussed above, Dr.
Vilke has extensive experience in emergency medicine, the treatment of out-of-hospital
cardiac arrest, and the development of training for first responders (such as those in law
enforcement) "when dealing with persons exhibiting symptoms of excited delirium."
Doc. Nos. 50-3 at 17, 19; 69, Ex. A at 38-43.  Dr. Vilke may base his necessary and
protective force opinions on such experience, as well as the video evidence of the
deputies' encounter with Kristopher, which he reviewed.  *See* Doc. No. 50-2, Ex. A at 2.

In sum, the Court **DENIES** Plaintiffs' motion to exclude the necessary and
protective force opinions of Dr. Vilke.

### v.  *Adequate Ability to Breathe*

Plaintiffs further move to exclude Dr. Vilke's "opinion" that Kristopher was not
having any difficulty ventilating because he could yell and move to some degree
(hereinafter, "ventilation opinion").  *See* Vilke *Daubert* at 8 (citing Doc. No. 50-2, Ex. A
at 7).  Plaintiffs argue that the opinion is unreliable.  *Id.*  Defendants counter that
Plaintiffs are actually criticizing the factual bases for Dr. Vilke's ultimate opinion that

Kristopher did not die from positional asphyxia.  *See* Vilke Opp. at 8.

The Court agrees with Defendants.  A review of the pertinent portion of Dr. Vilke's expert report shows that the challenged portion is one basis (*i.e.*, an observation made by Dr. Vilke in reviewing the evidence) for his opinion that "[t]he restraining process did not cause the sudden cardiac arrest and death [of] Mr. Birtcher."  Doc. No. 50-2, Ex. A at 7.  Plaintiffs' attack on this basis for Dr. Vilke's opinion is better made on cross-examination, as they go to the credibility of the testimony, not its admissibility. *See In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1219 (S.D. Cal. 2010); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 at fn14 (9th Cir. 2004) ("The factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.") (quoting *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865 (8th Cir. 2004)).  Accordingly, the Court **DENIES** Plaintiffs' motion to exclude the ventilation opinion.

### vi.  *Effect of Weight Force*

Lastly, Plaintiffs move to exclude as unreliable Dr. Vilke's opinion that "the weight force on Birtcher was not significant enough to cause asphyxia" (hereinafter, "weight force opinion").  Vilke *Daubert* at 8 (citing Doc. No. 50-2 at 8.  Defendants respond that the opinion is reliable as shown by Plaintiffs' acknowledgment of the research performed by Dr. Vilke regarding weight placed on subjects' mid-back.  *See* Vilke Opp. at 8-9.

The Court finds that Dr. Vilke's weight force opinion is reliable.  As Defendants recognize, Plaintiffs admit that Dr. Vilke performed research on the effect of weight applied to subjects' mid-back.  *See* Vilke *Daubert* at 8-9.  Yet, Plaintiffs' challenge here is grounded in the distinction between Dr. Vilke's study on weight force applied to the mid-back area of a subject, as opposed to the particular facts here involving weight force applied to the legs, hips, shoulders, and upper back.  *See* Vilke *Daubert* at 9-10. Defendants correctly assert that "Rule 702 does not require an expert to find a study

linking the exact facts"; it only "require[s] the expert demonstrate a scientifically valid basis for projecting the findings of a study to the proffered causal theory."  Vilke Opp. at 9 (quoting *Henricksen*, 605 F.Supp.2d at 1164-65); *see also Primiano*, 598 F.3d at 565, *as amended* ("[T]he [*Daubert*] inquiry must be flexible," and especially so where "[p]eer reviewed scientific literature may be unavailable because the issue may be too particular, new, or of insufficiently broad interest, to be in the literature.").

Accordingly, Dr. Vilke's weight force opinion is reliable and therefore Plaintiffs' motion to exclude it is **DENIED**.

### c.  Plaintiffs' Motion to Exclude Certain Opinions Proffered by Dr. Binh Ly

Plaintiffs move to exclude the opinion of Defendants' emergency medicine and toxicology expert, Dr. Binh Ly, that "[t]he methamphetamine concentration detected in Bitcher's blood is highly typical of cases of severe methamphetamine intoxication resulting in death and is in my opinion the cause of Kristopher Birtcher's sudden cardiac death while he was restrained by deputies." Doc. No. 51-1 ("Ly *Daubert*") at 1 (quoting Doc. No. 51-2, Ex. A at 4).  Defendants filed an opposition (Doc. No. 66 ("Ly Opp."), to which Plaintiffs replied.  Doc. No. 81 ("Ly Reply").

Plaintiffs argue that Dr. Ly's opinion is irrelevant, unhelpful to the jury, and unreliable.  *See* Ly *Daubert* at 2-5.  Defendants counter that Dr. Ly's opinion is helpful to the jury and reliable based on his unchallenged expertise in toxicology and because it was not necessary for Dr. Ly to rule out all other possible causes of death.  *See* Ly Opp. at 2-5.

#### i.  *Toxicity Level*

First, Plaintiffs move to exclude Dr. Ly's opinion that "[t]he methamphetamine concentration detected in Birtcher's blood is highly typical of cases of severe methamphetamine intoxication resulting in death" (hereinafter, "toxicity opinion").  Ly *Daubert* at 1 (quoting Doc. No. 51-2, Ex. A at 4).  Plaintiffs argue that this opinion "is not supported by any reliable basis that was disclosed by Ly as required by Rule 26(a)(2)(B)."  Ly *Daubert* at 3.  Defendants respond that Plaintiffs' complaint is of their

own making since they failed to question Dr. Ly during his deposition regarding the basis of his toxicity opinion, and in any event, Plaintiffs' own expert agreed with the toxicity opinion.  *See* Ly Opp. at 2-3.

The Ninth Circuit has explained that, if an expert did not conduct his or her own research, independent of the litigation, on the subject of the testimony, the district court must determine whether there exists any "objective, verifiable evidence that the testimony is based on 'scientifically valid principles.'"  *Daubert v. Merrell Dow Pharms., Inc.,* 43 F.3d 1311, 1317–18 (9th Cir. 1995).  Here, because it does not appear that Dr. Ly conducted his own independent research on the toxicity levels of methamphetamine, the Court will evaluate whether there exists objective and verifiable evidence of the validity of his theory.  Experts may demonstrate the scientific validity of a theory or technique by showing that "the research and analysis supporting the proffered conclusions have been subjected to normal scientific scrutiny through peer review and publication."  *Id.* at 1318. Alternatively, testifying experts may also show the validity of their theory by explaining "precisely how [the experts] went about reaching their conclusions and point[ing] to some objective source—a learned treatise, the policy statement of a professional association, a published article in a reputable scientific journal or the like—to show that they have followed the scientific method, as it is practiced by (at least) a recognized minority of scientists in their field."  *Id.* at 1319.

Here, the issue is whether Dr. Ly's toxicity opinion is reliable when he did not disclose the basis for his opinion, but it is nevertheless supported by the testimony of Plaintiffs' own expert.  The Court is not persuaded by Defendants' argument that Plaintiffs waived their right to challenge the toxicity opinion as baseless simply because they did not make an explicit inquiry at Dr. Ly's deposition.  Rule 26(a)(2)(B) clearly provides, *inter alia*, that an expert's "report ***must*** contain . . . a complete statement of all opinions the witness will express and the ***basis and reasons*** for them . . .."  Fed. R. Civ. P. 26(a)(2)(B) (emphasis added).  As Plaintiffs argue, "Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition

testimony." Ly Reply at 1 (quoting *Ciomber v. Cooperative Plus*, 527 F.3d 635, 642 (7th Cir. 2008)). Moreover, the burden is on Defendants to demonstrate the reliability of Dr. Ly's opinion. *See Daubert*, 509 U.S. at 592 & n.10. "Contrary to [Defendants'] argument, an opposing party is not required to file a motion to compel or depose the expert in order to develop what her opinion is or the reasons for [her opinion]." *In re Cent. European Indus. Dev. Co.*, 427 B.R. 149, 158 (Bankr. N.D. Cal. 2009) (citations omitted).

The Court is, however, persuaded by Defendants' argument that the testimony of Plaintiffs' pathology expert, Dr. Omalu, supports Dr. Ly's toxicity opinion. Dr. Omalu testified that "Birtcher had a methamphetamine level of 3.6 milligrams per liter" which "was within the toxic level." Doc. No. 69, Ex. D at 156. When asked for the basis of his opinion, Dr. Omalu could not provide one offhand, but testified that he would provide a source for defense counsel, adding that the source would be a table found in "so many" published papers. *Id*. at 157. In other word, according to Dr. Omalu, the toxicity levels of methamphetamine are well known amongst those with similar medical expertise.

In light of this, the Court will not exclude Dr. Ly's toxicity opinion even though Defendants did not disclose the basis for this opinion. Pursuant to Federal Rule of Civil Procedure 37(c), this Court has discretion to exclude evidence that is not submitted in accordance with Rule 26(a). Fed. R. Civ. P. 37(c) ("If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). Because Plaintiffs' own expert recognizes that the toxicity levels of methamphetamine are commonly known, the Court finds that the nondisclosure is harmless. Indeed, Plaintiffs do not identify any prejudice that they would suffer absent exclusion of the toxicity opinion. Accordingly, the Court **DENIES** Plaintiffs' motion to exclude the toxicity opinion of Dr. Ly.

ii. *Causation*

Plaintiffs also move to exclude Dr. Ly's opinion that "[t]he methamphetamine

concentration detected in Birtcher's blood . . . is in my opinion the cause of Kristopher Birtcher's sudden cardiac death while he was restrained by deputies" (hereinafter, "cause of death opinion").  Ly *Daubert* at 2 (quoting Doc. No. 51-2, Ex. A at 4 (emphasis omitted)).  Plaintiffs argue that this opinion is unreliable because it "is not based on a differential diagnosis or any other conceivably reliable methodology." *Id*. at 4.  Defendants responds that this Circuit "does not require experts to use differential diagnosis when reaching their conclusions."  Ly Opp. at 4 (citing *Carrion v. United States*, No. 13–CV–0041, 2016 U.S. Dist. LEXIS 99519 at *9 (D. Nev. 2016)).

The Court finds Dr. Ly's causation opinion is reliable and helpful to the jury.  The parties do not dispute that differential diagnosis is not a required methodology (*see* Ly Reply at 2); however, Plaintiffs assert that Defendants "fail[ed] to offer any other methodology that might establish reliability under the dictates of Rule 702." *Id*. at 2.  Plaintiffs do not challenge Dr. Ly's qualification as a toxicology expert, but nevertheless argue that he "simply produces subjective conclusions and speculation and asks the Court to take his word for it . . .." *Id*.  The argument is without merit.  It is permissible for Dr. Ly to draw on his extensive experience in medical toxicology and emergency medicine (*see* Doc. No. 52-2, Ex. A at 1), and to offer the causation opinion based on his review of the evidence. *See id*. at 1-2 (listing materials reviewed before formulating his opinions); *see also id*. at 5 ("These opinions are based on review of the material noted above and provided to a reasonable degree of medical certainty.").

Plaintiffs nevertheless insist that the causation opinion is unreliable since Dr. Ly failed to consider alternative potential causes of Kristopher's death, namely, asphyxia. *See* Ly *Daubert* at 4 ("Without any basis for ruling out other causes of death such as asphyxia, Ly may not reliably opine as to the cause or primary cause of Birtcher's death.") (citing *Clausen v. M/V New Carissa*, 339 F.3d 1049, 1058 (9th Cir. 2003)). *Clausen*, however, does not require differential diagnosis.  A review of Dr. Ly's expert report shows Dr. Ly's unchallenged opinion that "[s]evere methamphetamine intoxication and the associated extraordinary exertional behaviors may result in sudden cardiac arrest

absent any other factors."  Doc. No. 51-2, Ex. A at 4.  The Court is not persuaded by Plaintiffs' argument that Dr. Ly may not reliably take the next step of opining that Kristopher experienced sudden cardiac arrest as a result of his severe methamphetamine intoxication.  Similarly, his qualified opinion on causation would be helpful to the jury, which will be tasked with deciding the material issue of Kristopher's cause of death.  Accordingly, the Court **DENIES** Plaintiffs' motion to exclude Dr. Ly's cause of death opinion.

Finally, it is not clear to the Court whether Dr. Ly intends to opine, as Plaintiffs' suggest, that "if Birtcher did not receive treatment for methamphetamine intoxication, he would have died of a cardiac arrest or being struck by a vehicle . . .."  Ly *Daubert* at 4.  This "opinion" appears to have been elicited by Plaintiffs in Dr. Ly's deposition (*see* Doc. No. 51-2, Ex. B at 40), but it does not appear in his expert report.  Given the lack of clarity, the Court will **DEFER** ruling on this issue unless and until it arises during Dr. Ly's trial testimony.[7]

> d.  Plaintiffs' Motion to Exclude Certain Opinions Proffered by Dr. Matthew Steiner

Plaintiffs move to exclude the following opinions of Defendants' addiction medicine expert, Dr. Matthew Steiner: (1) Kristopher was under the influence of methamphetamine and possibly opioids at the time of the incident; (2) Kristopher had a stimulant use disorder at the time of the incident; (3) Kristopher was in the midst of a severe relapse on methamphetamine and heroin soon after his release from prison; (4) Kristopher was "pre-contemplative" and not proceeding toward sobriety at the time of his death; (5) Kristopher had an extensive legal history closely tied to drug use; and (6)

---

[7] That said, Defendants are hereby admonished that if Dr. Ly intends to offer the opinion at trial, the Court will likely sustain an objection to the opinion as outside the scope of his expert report.  *See Pajas v. Cty. of Monterey*, No. 16-CV-00945, 2019 WL 188660, at *3 (N.D. Cal. Jan. 14, 2019) (excluding opinion offered at deposition that was outside the scope of expert's report).

1  Kristopher had a long-standing history of opioid use disorder.  *See* Doc. No. 52-1

2  ("Steiner *Daubert*") at 1.  Defendants filed an opposition (Doc. No. 67 ("Steiner Opp."),

3  to which Plaintiffs replied.  Doc. No. 82.

4                    i.  *Under the Influence Opinions*

5          First, Plaintiffs move to exclude Dr. Steiner's opinions that (1) Kristopher was

6  under the influence of methamphetamine at the time of the incident, and (2) Kristopher

7  was possibly under the influence of opiates at the time of the incident.  *See* Steiner

8  *Daubert* at 2-3 (citing Doc. No. 52-2, Ex. A at 6-9 of 50).  Plaintiffs contend that such

9  opinions are unhelpful to the jury and unreliable.  *See id.*  Defendants respond that

10  "Plaintiffs have no grounds to preclude Dr. Steiner from identifying [that Kristopher was

11  under the influence of methamphetamine at the time of the incident] or from explaining

12  methamphetamine intoxication to jurors."  Steiner Opp. at 1.

13          Dr. Steiner's first opinion is that "[t]he evidence indicates within a reasonable

14  medical probability that Mr. Birtcher exhibited amphetamine intoxication at the time of

15  the incident."  Doc. No. 52-2, Ex. A at 7 of 50.  Plaintiffs do not challenge Dr. Steiner's

16  qualifications in addiction medicine, but nevertheless seek to exclude this opinion as

17  unhelpful to the jury because Plaintiffs do not dispute that Kristopher was under the

18  influence at the time of the incident.  The Court finds the opinion admissible.  As

19  discussed above, a central issue in this case is whether the deputies used excessive force

20  at the time of the incident.  Therefore, Dr. Steiner's opinion that Kristopher *exhibited*

21  amphetamine intoxication – as opposed to being merely under the influence of an

22  amphetamine – bears on this central issue and will help the jury determine the level of

23  force that might be appropriate during the incident.  It is unlikely that the average juror

24  would be familiar with what signs of amphetamine intoxication are typically exhibited by

25  users under the influence, and therefore, the Court finds that the proffered opinion will

26  assist the jury.  *See United States v. Cazares*, 788 F.3d 956, 977 (9th Cir. 2015) ("Experts

27  may be used to testify to matters outside the expected knowledge of the average juror.").

28  Accordingly, the Court **DENIES** Plaintiffs' motion to exclude this opinion.

Plaintiffs next challenge Dr. Steiner's opinion that Kristopher was possibly under the influence of opiates at the time of the incident. *See* Steiner *Daubert* at 3. A reading of the relevant portion of Dr. Steiner's report shows that, "[b]ased on the records," it was "unclear" to him "what evidence exists to suggest that decedent was under the influence of opioids at the time of the incident." Doc. No. 52-2, Ex. A at 10 of 50. Nevertheless, Dr. Steiner stated "[i]t seemed quite possible given the evidence that there may have been multiple substances contributing to the incident" because he "did not see negative toxicology on opioids as provided in the medical records." *Id*. Defendants do not respond to Plaintiffs' arguments regarding this opinion, and therefore fail to meet their burden to demonstrate the reliability of the proffered opinion. Further, the Court agrees with Plaintiffs that the opinion is unreliable as mere speculation and guesswork, given that Dr. Steiner prefaced the opinion by noting the lack of clarity. *See Daubert*, 509 U.S. at 590. Accordingly, the Court **GRANTS** Plaintiffs' motion to exclude this opinion.

### ii. *Stimulant Use Disorder*

Plaintiffs next move to exclude as unhelpful and unreliable Dr. Steiner's opinion that "[t]he evidence indicates within reasonable medical probability that Mr. Birtcher exhibited a stimulant use disorder at the time of the incident" (hereinafter, "SUD opinion"). *See* Steiner *Daubert* at 4-6 (citing Doc. No. 52-2, Ex. A at 10 of 50). Defendants respond that Dr. Steiner's SUD opinion is reliable because it is based on a published and accepted methodology, "Fifth Edition of the Diagnostic and Statistical Manual" (hereinafter, "DSM"). *See* Steiner Opp. at 4. Defendants further argue that Dr. Steiner's SUD opinion would help the jury make determinations on the credibility of Plaintiffs' testimony and their claims to damages. *See id*. at 2-5.

The Court finds that Dr. Steiner's SUD opinion would assist the jury in making determinations as to damages. Plaintiffs claim compensatory damages that include loss of life, loss of enjoyment of life, and loss of financial support. *See* Doc. No. 1 at 42. Dr. Steiner's SUD opinion bears on the issue of such damages. Plaintiffs concede this point in their motion. *See* Steiner *Daubert* at 4 ("Evidence on [a stimulant use disorder] . . .

would only be relevant to damages if there was a proper foundation that if he had not died, Birtcher was likely to have had substance abuse issues in the future . . ..").   It is unlikely that the average juror would be familiar with the effects of stimulant use disorder on one's life and familial relations, and therefore, the Court finds that the proffered opinion will assist the jury.  *See Cazares*, 788 F.3d at 977.

The Court also finds that Dr. Steiner's SUD opinion is reliable.  Plaintiffs argue that Dr. "Steiner never evaluated Birtcher and relies solely on medical and arrest records, the latter of which likely runs afoul of Rule 703."  Steiner *Daubert* at 5.  Plaintiffs' bald assertion that Dr. Steiner impermissibly relies on arrest records is without merit.  Federal Rule of Evidence 703 provides that "An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."  Plaintiffs provide no explanation as to why it would be unreasonable for Dr. Steiner to rely on arrest records, among other records, in forming his SUD opinion.

Plaintiffs next argue that Dr. Steiner lacks factual support for his SUD opinion.  *See* Steiner *Daubert* at 5-6.  This contention too is without merit.  Dr. Steiner explained he was opining based on the DSM methodology (*see* Doc. No. 52-2, Ex. A at 10 of 50), then proceeded to opine that at least five of the 11 criteria for a finding of a stimulant use disorder under the DSM methodology was present in the case of Kristopher.  *See id.* at 10-14 of 50.  Contrary to Plaintiffs' suggestion, Dr. Steiner based his SUD opinion on sufficient records demonstrating Kristopher's well-documented history of substance abuse and addiction, some of which indicates that he self-disclosed the history.  *See, e.g., id.*, Appendix A at 31 of 50 (2/16/10 record of Kristopher under the influence of a controlled substance and his admission of using drugs two days earlier), 33 of 50 ("Birtcher admitted to a long-term addiction to heroin."), 36 of 50 (discussing substance abuse history, including that Birtcher first used methamphetamine and heroin at age 12 and 13, respectively, and "[c]ontinued using both substances 'as much as he could in a

day'" and "experimenting with 'everything' in the past").  For the same reasons, the
Court rejects Plaintiffs' argument that Dr. Steiner's "severe amphetamine use disorder
with amphetamine intoxication delirium" should be excluded as unreliable.  *See* Steiner
*Daubert* at 6, n. 2.  Likewise, this opinion is based on sufficient record evidence,
including multiple witness statements regarding Kristopher's symptoms at the incident
and arrest records showing three weeks prior to the incident, Kristopher was arrested in
connection with the presence of drug paraphernalia.  *See* Doc. No. 52-2, Ex. A at 14 of
50.

   In sum, the Court **DENIES** Plaintiffs' motion to exclude Dr. Steiner's SUD
opinion and his related opinion regarding severe amphetamine use disorder with
amphetamine intoxication delirium.

   iii.  *Relapse*

   Next, Plaintiffs move to exclude Dr. Steiner's opinion that "Birtcher was in the
midst of a severe relapse on methamphetamine and heroin soon after his relapse from
prison" (hereinafter, "relapse opinion").  Steiner *Daubert* at 6 (citing Doc. No. 52-2, Ex.
A at 14-15 of 50).  Plaintiffs argue that the relapse opinion is unhelpful to the jury and
unreliable.  *Id*.  Defendants respond that Dr. Steiner's relapse opinion is helpful to the
jury on the issue of witness credibility and damages and is also reliable because it is
based on "the facts, his training and expertise, and arrived at through the methodology of
the DSM."  Steiner Opp. at 7.

   First, the Court finds Dr. Steiner's relapse opinion would be helpful to a jury on the
issue of damages.  As with the SUD opinion, the average juror is unlikely to be familiar
with the effects of drug relapse on one's life and familial relationships.  Therefore, the
relapse opinion would assist the jury in making determinations regarding Plaintiffs' claim
to damages.  *See Cazares*, 788 F.3d at 977.

   Second, the Court finds Dr. Steiner's relapse opinion is reliable.  Plaintiffs do not
challenge Dr. Steiner's expertise in addiction medicine, but rather argue the relapse
opinion "appears to be based solely on Steiner's transparent mischaracterization of the

September 27, 2017 arrest during which another man but not Birtcher was arrested for possession." Steiner *Daubert* at 6. That is not accurate. After considering Kristopher's history of drug abuse to offer the SUD opinion, Dr. Steiner referred to the records indicating that Kristopher "had just served time on a three-year sentence in State Prison for multiple charges which included armed robbery when he was detained for possession of drug paraphernalia on 9/29/17." Doc. No. 52-2, Ex. A at 14 of 50. Dr. Steiner then considered that Kristopher "had only been unincarcerated for approximately three weeks" when he was arrested with a companion for possession of drug paraphernalia with heroin residue. *See id.*; *see also id.*, Appendix A at 82 of 138; *id.*, Ex. C at COSD000509-510. The Court recognizes that the San Diego County Sheriff's Department's arrest record indicates that the drug paraphernalia was found in the companion's bag, rather than Kristopher's. *See id.*, Ex. C at COSD000509-510. Nevertheless, at a minimum, the arrest record indicates that Kristopher was arrested while associating with a companion who admitted to using heroin earlier and possessed drug paraphernalia, including brown residue (recognized to be heroin) in a glass vial. *See id.* This evidence, along with the other evidence that Dr. Steiner considered, provides a sufficient basis for Dr. Steiner's relapse opinion, such that the Court finds it to be reliable. Accordingly, the Court **DENIES** Plaintiffs' motion to exclude the relapse opinion.

### iv. *Pre-Contemplative*

Plaintiffs further contend that the Court should exclude Dr. Steiner's opinion that "Birtcher was not proceeding toward sobriety or likely to achieve it, but rather was 'pre-contemplative' toward sobriety" (hereinafter, "pre-contemplative opinion"). Steiner *Daubert* at 6 (citing Doc. No. 52-2, Ex. A at 15-18 of 50). Plaintiffs argue that Dr. Steiner's pre-contemplative opinion is unhelpful, unreliable, and impermissibly speculates as to Kristopher's subjective state of mind. *See id.* at 6-7. Defendants counter that Dr. Steiner's pre-contemplative opinion is reliable and would be helpful to the jury on the issues of witness credibility and damages.

The Court finds Dr. Steiner's pre-contemplative opinion would be unhelpful to the

jury.  As discussed above, expert testimony may be helpful in aiding the jurors if it bears on "matters outside the expected knowledge of the average juror."  *See Cazares*, 788 F.3d at 977.  Here, Defendants argue that the pre-contemplative opinion would be helpful for the jury in assessing damages as they relate to Kristopher's future sobriety.  *See* Steiner Opp. at 10.  The Court is not persuaded the proffered opinion would be helpful, as it is based on facts that the average juror is perfectly capable of understanding, along with the implications on Kristopher's chances of achieving sobriety.  *See* Steiner Opp. at 8-9 (listing the facts on which the pre-contemplative opinion is based).  In other words, having Dr. Steiner review Kristopher's failures of achieving sobriety would not be any more helpful to the jury than presenting those underlying facts for the jury's consideration.  Defendants may take this latter approach if they are concerned with the Plaintiffs' testimony as it relates to damages and Kristopher's future sobriety.  Accordingly, the Court **GRANTS** Plaintiffs' motion to exclude the pre-contemplative opinion.

### v.  *Legal History of Drug Use*

Next, Plaintiffs move to exclude Dr. Steiner's opinion that Kristopher has an extensive legal history of drug use with no significant interruption in the offense history nor any extended period of sobriety.  *See* Steiner *Daubert* at 7-8 (citing Doc. No. 52-2, Ex. A at 20 of 50).  Defendants argue that the opinion is proper because it is based on sufficient facts and Dr. Steiner's expertise.  *See* Steiner Opp. at 10-11.

The Court finds that Dr. Steiner's opinion on the legal history of Kristopher's drug use would be unhelpful to the jury.  A reading of Dr. Steiner's opinion and the bases therefor demonstrate that the opinion is simply based on Dr. Steiner's review of Kristopher's arrest records and history of encounters with law enforcement.  As with Dr. Steiner's pre-contemplative history, Dr. Steiner's opinion on Kristopher's legal history of drug use would not be helpful to the jury because the average juror is perfectly capable of reviewing the same underlying records and drawing her own conclusions.  Therefore, the Court **GRANTS** Plaintiffs' motion to exclude this proffered opinion.

Case 3:18-cv-01541-MMA-LL   Document 88   Filed 07/31/20   PageID.4474   Page 31 of 33

### vi. *History of Opioid Use Disorder*

Plaintiffs further move to exclude Dr. Steiner's opinion that Kristopher had a long-standing history of opioid use disorder (hereinafter, "opioid opinion"). *See* Steiner *Daubert* at 8. Defendants respond that Dr. Steiner's opioid opinion would be helpful to the jury in considering liability, witness credibility, and damages, and is reliably based on sufficient facts and Dr. Steiner's expertise. *See* Steiner Opp. at 11-12.

The Court finds that Dr. Steiner's opioid opinion is admissible. Like Dr. Steiner's SUD opinion, his opioid opinion is reliably based on his expertise, the DSM methodology, and record evidence documenting Kristopher's history of drug use. *See* Doc. No. 52-2, Ex. A at 23 of 50. Moreover, Dr. Steiner's opioid opinion would be helpful to the jury in considering Plaintiffs' damages, since the average juror is unlikely to be familiar with the effects of opioid use disorder on one's life and familial relations. *See Cazares*, 788 F.3d at 977. Therefore, the Court **DENIES** Plaintiffs' motion to exclude the opioid opinion.[8]

///
///
///
///
///
///
///
///
///

---

[8] The Court, however, cautions Defendants that Dr. Steiner's opioid use opinion should not include his discussion of "the possibility of [Birtcher's] opioid intoxication at the time of the incident . . .." Doc. No. 52-2, Ex. A at 23 of 50. Given the uncertainty that Dr. Steiner clearly expressed, any testimony from Dr. Steiner opining that Kristopher experienced opioid intoxication at the time of the incident would be unreliable.

-31-                                    18cv1541-MMA-LL

CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' *Daubert* motions.  Specifically, the Court:

1. **GRANTS** Plaintiffs' motion to exclude Martin's opinions on the states of mind and motives of Kristopher and the deputies; **GRANTS IN PART** Plaintiffs' motion to exclude Martin's medical-related opinions identified above; **GRANTS IN PART** Plaintiffs' motion to exclude Martin's "legal opinions" identified above; **DENIES** Plaintiffs' motion to exclude Martin's opinion regarding a lack of literature on TASER being a deadly force measure; **DENIES** as moot Plaintiffs' motion to exclude Martin's opinion on "relatively culpability," since Defendants admit "eliciting such expert testimony would be inappropriate," (Martin Opp. at 5, n. 4); **DENIES** Plaintiffs' motion to exclude Martin's opinions on Kristopher's ability to breathe and "the weight of medical research and literature" (Martin Reply at 6 (citing Doc. No. 49-2, Ex. D at 27 & nn. 40-42)); and **DENIES** Plaintiffs' motion to exclude Martin's observations that form the basis for his conclusions and his "foundational" opinions;

2. **GRANTS** Plaintiffs' motion to exclude Dr. Vilke's medical examiner opinion; **DENIES** Plaintiffs' motion to exclude Dr. Vilke's spit sock opinion; **DENIES** Plaintiffs' motion to exclude Dr. Vilke's medical assistance opinion; **DENIES** Plaintiffs' motion to exclude Dr. Vilke's necessary and protective force opinions; **DENIES** Plaintiffs' motion to exclude Dr. Vilke's ventilation opinion; and **DENIES** Plaintiffs' motion to exclude Dr. Vilke's weight force opinion;

3. **DENIES** Plaintiffs' motion to exclude Dr. Ly's toxicity opinion and cause of death opinion; and **DEFERS** ruling on Plaintiffs' motion to exclude the deposition testimony elicited from Dr. Ly, since it is unclear whether Dr. Ly intends to opine as such at trial; and

4. **GRANTS** Plaintiffs' motion to exclude Dr. Steiner's opinion that Kristopher was possibly under the influence of opiates at the time of the incident; **GRANTS**

Plaintiffs' motion to exclude the pre-contemplative opinion; **GRANTS** Plaintiffs' motion to exclude Dr. Steiner's opinion regarding Kristopher's legal history of drug use; **DENIES** Plaintiff's motion to exclude Dr. Steiner's opinion that Kristopher was under the influence of amphetamine at the time of the incident; **DENIES** Plaintiffs' motion to exclude Dr. Steiner's SUD opinion and his related opinion regarding severe amphetamine use disorder with amphetamine intoxication delirium; **DENIES** Plaintiffs' motion to exclude Dr. Steiner's relapse opinion; and **DENIES** Plaintiffs' motion to exclude Dr. Steiner's opioid opinion.

**IT IS SO ORDERED.**

Dated: July 31, 2020

HON. MICHAEL M. ANELLO
United States District Judge